THEO. GRAVES v. TERRITORY OF OKLAHOMA.

(Filed February 15, 1906.)

JURY—Influencing Action. Where in a motion for new trial in a criminal cause, charging misconduct of the jury in permitting a bailiff of the court to be present during its deliberations and taking part therein it is clearly shown that while the bailiff was in the jury room two or three times during the deliberations of the jury, but took no part in such deliberations and used no language or performed any act intended to influence them, or which might tend to influence them, and it is shown by the testimony of the jurors that the presence of the bailiff did not in any way influence them in finding their verdict; the wrongful presence of the bailiff in 'the jury room, Held, to be immaterial error.

(Syllabus by the Court.)

*Error from the District Court .of Washita County; before James K. Beauchamp, Trial Judge.*

*Rutherford Brett* and *Jones, Lucky & Brown*, for plaintiff in error.

*P. C. Simons, Attorney General* for defendant in error.

Opinion of the court by

GILLETTE, J.: The plaintiff in error, Theo. Graves, was indicted on the 16th of September, 1903, by the grand jury of Washita county for the murder of one W. T. Samply on the 25th of June, 1903, and on being arraigned before the district court of said county entered his plea of not guilty to the charge contained in such indictment. The cause was tried at said September, 1903, term of said court, and on such trial the jury disagreed. At the October term, 1904, the cause again came on for trial, and upon such trial the jury returned a verdict finding him guilty of manslaughter in the first degree.

A motion for a new trial was duly presented to and overruled by the court, and the defendant sentenced to ten years in the state prison. From this order and judgment the case comes to this court upon error.

The sole question presented upon this appeal is the misconduct of the jury upon the trial of said cause, and the consequent error of the court in overruling the motion for a new trial based thereon.

The testimony of ten of the jurors who tried the case and of the bailiff attending them, was taken upon the hearing of the motion for a new trial, and from this testimony the following facts may be said to be reasonably established: First, the bailiff attending the jury entered the jury room on several occasions during the deliberations of the jury; second, the bailiff did not participate in the deliberations of the jury as to either the guilt or innocence of the defendant, or the verdict which should be returned by the jury; third, in answer to a question from some juryman the.

bailiff did say, "Well, you have the five points (meaning the five different forms of verdict given the jury by the court) to select from;" fourth, the bailiff did not take part in the discussion of the case, and did not suggest any form of verdict that should be returned; nor was anything said by the bailiff to the jury or to any member of the jury which did or tended to influence them in arriving at a verdict, or fixing the degree of punishment.

Upon this state of facts did the court below err in refusing a new trial upon the ground of misconduct of the jury? We think this question must be answered in the negative.

We are aware that this question has been many times before the courts, and extreme views have been presented upon both sides of the question, and it is extremely difficult to extract any general rule therefrom, further than that while the presence of the officer in the charge of a jury is generally (and it might be said universally) held to be misconduct and therefore disapproved, yet the general and later trend of authority is to the effect that such presence, *ipso facto,* is not ground for a new trial, unless it appears that the officer participated in the proceedings of the jury, or in some manner and to some extent influenced the minds of the jury either as to the guilt or innocence of the defendant, or as to the form of the verdict they should return.

In the case of *People v. Knapp,* 42 Mich. 267, 3 N. W. 927, the most rigid rule is laid down by Chief Justice Cooley delivering the opinion of the court, wherein the court says:

"It was held in *Cole v. Swan* 4 Green (Iowa), 32, that officers having a jury in charge, while they are deliberating

on their verdict, should never speak to them except to ask if they have agreed, and that if an officer violated this rule, any verdict afterwards returned, whether the conversation did or did not have any influence in producing the verdict, should be set aside the moment the fact comes to the knowledge of the court.

"We have said enough already to show that it is not conversation alone that is mischievous; the mere presence of the officer within the hearing of the jury is quite often as much so. In one case what he would say might influence the verdict; in another, what his presence might restrain jurors from saying might accomplish the same result."

This decision was rendered in 1879, and so far as we know has been followed and adopted in but one case, that of *Gandy. v. State,* 40 N. W. 302, Neb., the decision in that case being by a divided court, the Chief Justice dissenting.

The case of *State v. Brown,* 22 Kan. 222, is quoted and relied upon by plaintiff in error, but in that case it appears beyond all dispute that the officer participated in the deliberations of the jury by reading the instructions over to the jury. On his examination he testified that he read them correctly, but the supreme court says, "As he violated his oath by reading the instructions, how can we say his testimony that he read the instructions correctly is to be believed?" Manifestly the circumstances in that case were widely different from the facts in the case at bar. The actions of the officer in that case ought to and likely did have much to do with determining the verdict of the jury.

In the case of *Crocket v. State,* 52 Wis. 211, 8 N. W. 603, Cole, C. J., delivering the opinion, the following facts are stated:

"The affidavits show, and the fact is admitted, that five of the jurors, at different times during the progress of the trial, separated from their fellows. Three under the charge of an officer, were permitted to go to their respective homes in the city for the purpose of changing their clothes. The juror Stewart was allowed to go to his home on Sunday, under charge of an officer, for the purpose of changing his clothing, and afterwards to take a walk in the city with such officer, stopping at one or two places to buy a cigar.

"Another juror also in charge of an officer went on different days to the American House, at one time to ask the clerk for an envelope; at another to get a pair of rubbers, and to see if there was any mail for him. This is the separation or misconduct on the part of the jurors which it is claimed vitiates their verdict."

The jurors were not sworn, but the officer testified that he had no conversation with the jurors during the time of their separation, and that there was no conversation between any person and the juror about the same, etc.

The court further proceeds:

"When the cause was finally submitted, an officer was sworn to take charge of the jury. The learned circuit judge told the officer that he might remain in the room with the jury while they were deliberating, but at the same time cautioned such officer in case the jury agreed, not to disclose the verdict to any one, nor to communicate to any one the progress or result of the deliberations of the jury. We think the fact is fully established that the officer remained in the room with the jury while they were considering their verdict, for the purpose of attending to the fire or furnishing the jury with water, but there is nothing whatever to show that he took any part in their deliberations or attempted in any manner to influence the verdict. But it is insisted by the learned counsel for the plaintiff in error that the mere presence of

the officer in the room while the jury was considering of their verdict affords a sufficient ground for granting a new trial.

After commenting upon the evidence and the argument of counsel, the court concludes its judgment in these words:

"The only doubt we have had upon this point arises from the recent decision of the supreme court of Michigan in *People v. Knapp,* 3 N. W. 927. In that case it was held that if the officer in charge of the jury remained present in the room during the deliberations of such, though he may do nothing but listen, and it does not appear that a party has been prejudiced thereby, yet this will be a good ground for setting aside the verdict. We have examined with some care the opinion in that case, and confess, while we have the highest respect for the decisions of that able and enlightened tribunal, we are unable to adopt its reasoning. We do not care to make any further comment on the decision than to say it is not satisfactory to our minds, and we decline to follow it.

To much the same effect is the case of *Gainey et al. v. The People,* 97 Ill. 270, in which case that court commenting upon the case of the *People v. Knapp,* say:

"The case of the *People v. Knapp* is based upon the broad ground that the presence of an officer during the deliberations of the jury, is such an irregularity and invasion of the right of a trial by a jury as to absolutely vitiate the verdict in all cases, without regard to whether any improper influences were actually exerted over the jury or not. While we feel and frankly confess the force of the reasoning by which this conclusion is reached, we are unable to fully give it our sanction. We prefer saying such a breach of duty on the part of the officer is a grave irregularity which will or will not have the effect of vitiating the verdict, depending upon the circumstances in each particular case."

In *State v. LaGrange* (Iowa) 68 N. W., 557, also cited and relied upon by plaintiff in error it appears the bail-

iff in charge of the jury communicated with the jury, and made himself officious in various ways by advising the jury and telling them that they would have to remain out until Monday morning unless they sooner agreed, and it appeared from the affidavits of some of the jurors that they would not have agreed to the verdict had it been for the misrepresentations so made, etc. The court set aside the verdict, but in so doing used the following language:

"Each affidavit states that the affiant would not have agreed to the verdict had it not been for the representations so made, and had he not believed that unless he did consent to a verdict of guilty he would be required to sit in the jury room until Monday morning."

We are in perfect accord with this conclusion of that court, but in concluding the decision in the case the court say:

"We are not to be understood, however, as holding a new trial should have been granted in this case, had it been made to appear that the prejudice did not result from the misconduct in question. Technical errors or defects which do not affect the substantial rights of the parties are to be disregarded."

The case of *State v. Bailey,* 32 Kan., 83, 3 Pac. 769, and the case of *State v. Pepo,* 23 Mont. 473, 59 Pac. 722, make the same comment and reach the same conclusion as to the guiding rule by which such misconduct on the part of an officer having a jury in charge is to be determined, viz: that when there is such irregularity which may affect the impartiality of the proceedings, or when the jury have been exposed to any influence which may have affected their verdict as where they have been improperly permitted to separate, or have had communications not authorized, then inasmuch as

there can be no certainty that the verdict has not been improperly influenced, it is the duty of the court to say that such verdict will by such irregularity be vitiated, unless on the part of the prosecution it is affirmatively shown that no injury to the prisoner could have occurred thereby.

This precise question has not heretofore been before this court, and we therefore feel at liberty to accept such rule in the solution of it is in harmony with what we think is the weight of authority at the present time, and is most in consonance with reason and the safe and orderly administration of justice. Observing this rule as a guide in the solution of this case, we think the irregularity and misconduct of the officer in charge of the jury in this case as set forth in the application for a new trial was fully met and explained by the prosecution, and the evidence taken upon the hearing of the motion satisfactorily shows that the rights of the defendant were not prejudiced by the misconduct complained of.

The judgment of the court below is therefore affirmed, with costs, and it is ordered that its judgment be carried into effect.

Beauchamp, J., who presided in the court below, not sitting; Hainer, J., dissenting; all the other Justices concurring.